# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### EASTERN DIVISION

No. 4:07-CV-81-D

| | | |
|---|---|---|
| NELSON BRIDGEMAN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on the parties' Cross Motions for Judgment on the Pleadings **[DE-11 &15]**. The time for the parties to file any responses or replies has expired. Accordingly, these motions are now ripe for adjudication. Pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3), the underlying action seeks judicial review of the final decision by the Defendant denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Pursuant to 28 U.S.C. § 636 (b)(1), this matter is before the undersigned for a memorandum and recommendation. For the reasons set forth herein, the undersigned RECOMMENDS that the matter be remanded to permit the ALJ to further address and discuss his reliance on an incorrect medical record, his failure to give weight to Medicaid's determination of disability, and whether Plaintiff's intellectual deficiencies are considered severe impairments and meet Listing 12.05C. In light of the forgoing, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings **[DE-11]** be DENIED IN PART AND GRANTED IN PART and Defendant's Cross-Motion for Judgment on the Pleadings **[DE-15]** be DENIED without prejudice.

## Statement of the Case

Plaintiff applied for DIB and SSI on October 23, 2001, alleging that he became unable to work on September 24, 2001, due to a ruptured disc in his back, an acute gallbladder attack with stones in his bile duct, a chemical imbalance, and a drug addiction. [R. at 58-60, 486-88].[1] These applications were denied initially and on reconsideration whereupon he timely filed a request for a hearing. Id. at 33-34, 42-47, 52-54, 489. A hearing was held on March 16, 2006, before an Administrative Law Judge ("ALJ") who found Plaintiff was not disabled during the relevant time period in a decision dated June 13, 2006. Id. at 510-36, 12-26. On May 14, 2007, the Social Security Administration's Office of Hearings and Appeals denied Plaintiff's request for review, thus rendering the ALJ's decision the final decision of the Defendant. Id. at 27. Plaintiff filed the instant action on June 6, 2007. **[DE-5]**.

## Standard of Review

The Court is authorized to review the Defendant's denial of benefits under 42 U.S.C. § 405 (g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

Id.

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they

---

[1] Plaintiff had a protective filing date for SSI on October 9, 2001. [R. at 485].

are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, it is this Court's duty to determine both whether the Commissioner's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

## Analysis

The Social Security Administration ("SSA") has promulgated the following regulations, which establish a five-step sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App. I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

3

Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In cases where drug abuse and/or alcoholism is alleged, the ALJ is required to go beyond the five-step evaluation if he finds that the claimant is disabled:

> [I]f an administrative law judge finds a claimant disabled, the guidelines require the ALJ to determine whether there is medical evidence of drug abuse and/or alcoholism. If the claimant is disabled and there is medical evidence of drug abuse and/or alcoholism, the ALJ must determine whether the claimant would still be disabled if he stopped using the drugs or alcohol (i.e., whether the drug or alcohol addiction is a material factor contributing to the disability). If drug abuse and/or alcoholism is material, the claimant cannot be considered to be disabled, and is not entitled to be eligible for benefits. The Plaintiff has the burden of proving that his drug abuse and/or alcoholism are not contributing factors material to the determination of his disability.

Sanders v. Apfel, No. 3:00-CV-296-H, 2001 U.S. Dist. LEXIS 861, *at 17-18 (W.D.N.C. Jan. 26, 2001) (unpublished decision) (citing 20 C.F.R. §§ 404.1535 and 416.935) (internal citations omitted).

In the instant action, the ALJ employed the five-step evaluation. First, the ALJ found that Plaintiff is no longer engaged in substantial gainful employment. [R. at 17]. At step two, the ALJ concluded that Plaintiff suffered from the following severe impairments: polysubstance dependence, a depressive disorder, degenerative disc disease, reflex sympathetic dystrophy ("RSD"), hypertension, chronic obstructive pulmonary disease ("COPD"), and diabetes mellitus. Id. In completing step three however, the ALJ determined that "[i]f the [Plaintiff] stopped the substance use, [he] would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520 (d) and 416.920 (d))." Id. at 19.

The ALJ then proceeded with step four of his analysis and determined that Plaintiff retained

4

the residual functional capacity ("RFC") to: sit 6 hours in an 8-hour day; stand and walk for up to 3 hours each in an 8-hour day; work in an environment which would permit him to change between sitting and standing positions at will; lift a maximum of 20 pounds; lift and carry 10 pounds frequently; and perform only simple, routine, and repetitive tasks. Id. at 20.

At the hearing, the Vocational Expert ("VE") testified that Plaintiff's "past relevant work experience was comparable to the following jobs as defined in the Dept. of Labor's Dictionary of Occupational Titles ("DOT"): automobile mechanic and bagger." Id. at 24. The expert further explained that the requirements for these jobs exceeded Plaintiff's RFC. Id. Based on the VE's testimony and Plaintiff's RFC, the ALJ concluded that Plaintiff would not be able to perform any of his past relevant work even absent substance use. Id. However, the VE stated that based on Plaintiff's age, education, past relevant work experience, and RFC, he was capable of making a vocational adjustment to work that exists in significant numbers in the national economy. Id. at 25. Thus, at step five, the ALJ concluded that the Medical-Vocational Rule 202.18 directed a finding that Plaintiff was not disabled at any time through the date of his decision. Id. In making these determinations, the ALJ cited substantial evidence, a summary of which now follows.

Plaintiff has an extensive history with polysubstance abuse dating back to 1998. Id. at 17, 397. On June 10, 1998, Plaintiff was involuntarily committed to Cherry Hospital in Goldsboro, N.C. Id. at 17, 397-98. In the petition, his brother indicated that Plaintiff had a history of stealing and self-medicating with his family members' medication. Id. at 17, 397. On admission, Plaintiff reported that he had been having crying spells and possible auditory hallucinations. Id. at 17, 397-98. When he was discharged, he was diagnosed with dysthymic disorder, sedative, hypnotic, or

anxiolytic abuse. <u>Id.</u> at 17, 399. Plaintiff continued treatment after his discharge at a mental health center from August-September 2001 at which time he was diagnosed with opioid dependence involving vicodin and oxycontin and major depression. <u>Id.</u> at 17, 147- 51. He was prescribed prozac and desyrel for the treatment of these conditions. <u>Id.</u> at 17, 147-48. In November, 2002, Plaintiff entered a DART substance abuse program, which he attended through June, 2003. <u>Id.</u> at 17, 266-72

On April 19, 2002, Plaintiff was readmitted to Cherry Hospital due to suicidal and homicidal ideation. <u>Id.</u> at 17, 223-24. He reported having auditory hallucinations in which voices were telling him to kill himself and others. <u>Id.</u> He also indicated that he was having visual hallucinations. <u>Id.</u> After a thorough evaluation, Plaintiff was diagnosed with cocaine dependence, cocaine induced mood disorder, and bipolar disorder with depression and psychotic features. <u>Id.</u> at 17, 227. The doctors prescribed wellburtrin, depakote, and geodon for the treatment of his depression, mood swings, and hallucinations. <u>Id.</u> When he was discharged, Plaintiff's mental status was stable and he no longer had suicidal or homicidal ideations. <u>Id.</u> at 17, 226. However, mental health records reveal that in June, 2002, Plaintiff relapsed and began using cocaine, vicodin, and oxycontin. <u>Id.</u> at 17, 128-30. He also had a recurrence of auditory hallucinations at that time. <u>Id.</u> at 17, 128, 130.

On December 12, 2003, Plaintiff was again admitted to Cherry Hospital for his addiction to cocaine and heroin as well as recurrent suicidal ideations. <u>Id.</u> at 17, 281. On admission, he exhibited vegetative signs of depression and his memory was impaired. <u>Id.</u> at 17, 282. Plaintiff was diagnosed with polysubstance dependence and opioid-induced mood disorder. <u>Id.</u> at 17, 285. During his hospitalization, his condition improved with treatment and abstinence, and on discharge,

6

his affect, speech, and psychomotor activity were normal.  Id.  He also denied suicidal or homicidal ideations.  Id.

Several months after his third admission to Cherry Hospital, from March to May 2004, Plaintiff attended another DART substance abuse program.  Id. at 17-18, 257.  He actively participated in the program and abstained from substance abuse.  Id.  After the program, he continued treatment at a mental health center under the care of Dr. Ronald Taska.  Id. 18, 476.  Dr. Taska diagnosed Plaintiff with major depression and cocaine abuse and prescribed wellburtrin, elavil, and individual psychotherapy for treatment.  Id. at 18, 476-80.   With consistent treatment and abstinence, Plaintiff's depressive disorder was stable and his substance abuse was in remission. Id. at 18, 476-479.  His thought processes and affect remained appropriate and his mood, motor activity, and rate of speech were normal.  Id. at 18, 479.  In addition, Plaintiff did not exhibit any delusions, hallucinations, or suicidal or homicidal ideations; his only residual depressive symptom was insomnia.  Id.  Furthermore, Plaintiff's treatment records indicate that he was able to secure a restricted driver's license and obtain his medication through a patient assistance program. Id.  at 18, 332.

During the hearing, Plaintiff testified that he first started to suffer from depression when he got divorced.  Id. at 18, 521-22.  He explained that he felt worthless and would have crying spells. Id. at 18, 522.  He also testified that since he received treatment from a substance abuse program, he stopped using illegal drugs and his depression significantly improved.  Id. at 18, 522.  With regards to this testimony, the ALJ concluded:

[T]he claimant is credible concerning the following symptoms and limitations:

during periods when he has been abusing drugs, he has had recurrent episodes of decompensation and severe depressive symptoms which impact on his ability to maintain socialization. This is supported by the records from his periods of hospitalization which reveal that he had [a] depressed mood and affect, hallucinations, and suicidal ideations.

Id. at 18.

The ALJ also noted that when Plaintiff regularly abuses drugs, he exhibits behavioral changes and symptoms related to his depressive syndrome such as anhedonia, appetite disturbance with change in weight, decreased energy, feelings of worthlessness, difficulty concentrating, thoughts of suicide, and hallucinations. Id. The ALJ further explained that these symptoms cause a moderate restriction of activities of daily living, difficulties in maintaining social functioning, deficiencies in maintaining concentration, persistence, and pace, and episodes of decompensation. Id. As a result, the ALJ concluded that "[t]hese clinical abnormalities and resulting functional limitations meet the criteria of Listing 12.09 with reference to Listing 12.04A and B." Id.

However, the ALJ opined that when Plaintiff abstains from drug use, his depressive syndrome has been stable but characterized with insomnia, decreased energy, and difficulty concentrating, which has caused mild restrictions in his daily living, difficulty in maintaining social functioning, and moderate deficiencies in maintaining concentration, persistence, and pace. Id. at 19. Thus, the ALJ concluded "[t]hese clinical findings and resulting functional limitations do not meet the relevant criteria in Listing 12.04A and B." Id.

In addition to problems with polysubstance dependence and depression, Plaintiff has also been diagnosed with degenerative disc disease of the lumbar spine and chronic low back pain. Id. at 20, 180, 375, 385, 451. These conditions resulted from a work-related injury that occurred in

8

1992. Id. at 20, 204. Plaintiff sought treatment for these conditions from Drs. C.O. Boyette, David Cosenza, and Thurmon Whitted. Id. at 20, 180, 376. Physical examinations revealed that Plaintiff has tenderness in his lumbosacral spine on palpitation and some lumbar discomfort with straight leg raises but no radiculopathy. Id. at 20, 301, 376, 381. Plaintiff has also had normal and symmetrical reflexes and sensory findings, weakness in his lower extremities on some examinations, but normal motor strength on other occasions. Id. at 20, 376, 385, 483-84. In addition, Dr. Whitted observed that Plaintiff has an antalgic gait. Id. at 20, 376, 381, 385. This finding is at odds with other examinations that revealed a normal gait and stance and no difficulty rising from a seated position or getting on/off an examination table. Id. at 20, 206. However, despite Plaintiff's diagnoses with degenerative disc disease, the ALJ noted that he does not have symptoms or signs of nerve root compression syndrome, arachnoiditis, or lumbar stenosis as required to meet Listing 1.04. Id. at 19; 20 C.F.R. Pt. 404, Subpt. P, App. I.

Plaintiff has been prescribed several pain relievers without full remission of his chronic back pain, but he has noted a decrease in his symptoms. Id. at 20, 384, 387. On March 11, 2005, Dr. Cosenza reported that Plaintiff's pain "is individual and subjective. [Plaintiff] reports moderate to severe pain. I cannot comment on what degree of pain he suffers as I have no way of objectively measuring pain. I have no reason to believe that he suffers pain to a level he believes is severe." Id. at 20, 330. For further treatment of his chronic pain, Plaintiff underwent a pain management program with Dr. Whitted. Id. at 20, 102, 482. During an examination on January 24, 2006, Plaintiff indicated that his pain was at a 4/10 level and that it was localized to the lumbar spine. Id. at 20, 482-83. Subsequently, on March 16, 2006, Dr. Whitted reported that Plaintiff only had mild

9

to moderate pain.  Id. at 20, 481.

In addition to his back injury, Plaintiff also sustained a crush injury to his lower left extremity during the work-related accident in 1992, and his leg pain has persisted since that time. Id. at 20, 204.  Plaintiff sought treatment from Drs. Cosenza and Whitted.  Id.  Dr. Cosenza reported that plaintiff's leg condition was evidenced by sweating abnormalities and increased skin temperature.  Id. at 20, 481.  Dr. Whitted noted that while Plaintiff had numbness and tingling in his left extremity, he did not exhibit allodynia or hyperpathia.  Id. at 21, 453.  However, during an examination on January 24, 2006, Plaintiff reported to Dr. Whitted that when he stood for prolonged periods he had pain in his left foot.  Id. at 21, 483.  Despite his condition, the ALJ opined that Plaintiff does not have any clinical signs of persistent inflammation of his leg or foot.  Id. at 19. Furthermore, the ALJ also noted that he has not required continuing surgical management of his RSD as required for this condition to meet Listing 1.08 and he does not have disorganization of motor function as required for this condition to meet the criteria in Listing 11.04B.  Id.; 20 C.F.R. Pt. 404, Subpt. P, App. I.

In combination with a back and leg injury, Plaintiff also suffers from hypertension, chronic obstructive pulmonary disease ("COPD"), and diabetes mellitus.  Id. at 21.  Plaintiff has sought treatment for his hypertension from Drs. Boyette, Cosenza, and Firnhaber.  Id.  at 21, 180, 300, 455. These doctors prescribed an anti-hypertensive treatment regimen to control his condition, but Plaintiff had an episode in September 2005, which was indicative of congestive heart failure, evidenced by 2-3+ edema of the lower extremities and tachycardia.  Id. at 21, 301, 388, 390, 458. The ALJ noted that despite his diagnoses with hypertension, Plaintiff has not developed any

10

symptoms or signs of hypertensive retinopathy, nephropathy, or cerebral or cardiac ischemia. <u>Id.</u> at 21. The ALJ further explained that Plaintiff's hypertension has not been manifested by abnormalities on exercise testing as described in Listing 4.04A . <u>Id.</u> at 19; 20 C.F.R. Pt. 404, Subpt. P, App. I.

With regards to Plaintiff's COPD, he has had symptoms of dysnpea on exertion, and during several examinations, he has been observed to have coarse breath sounds and a barrel chest. <u>Id.</u> at 21, 300, 387-91. To treat this condition, Dr. Cosenza prescribed advair and Plaintiff reported that this medication was helpful. <u>Id.</u> at 21, 387, 388, 390. On most examinations, Plaintiff's lungs were clear, and he did not exhibit any clinical signs of respiratory insufficiency such as cyanosis, clubbing, or ongoing use of the accessory muscles of respiration. <u>Id.</u> at 21, 376, 381, 389, 390. In addition, when Plaintiff was examined by Dr. Firnhaber in December, 2005, after treatment with lasix, Plaintiff denied any dyspnea on exertion or any paroxysmal nocturnal dyspnea. <u>Id.</u> at 21, 455-56. After considering this evidence, the ALJ concluded that Plaintiff's COPD has not resulted in chronic pulmonary insufficiency evidenced by abnormal results on pulmonary function studies or studies of gas exchange as required for this condition to meet the relevant criteria in Listing 3.02. <u>Id.</u> at 19;    20 C.F.R. Part 404, Subpart P, App. I.

Finally, Plaintiff was diagnosed with diabetes mellitus in August, 2005. <u>Id.</u> at 21, 386. At that time, his serum glucose level was 243 and his AIC was 12.9. <u>Id.</u> To better control his diabetes, his doctors prescribed glipizide and metformin. <u>Id.</u> at 21, 386, 457-58. Subsequent examinations revealed that Plaintiff's serum glucose levels were reduced with treatment. <u>Id.</u> at 21, 455, 457-58. Despite his diagnosis, Plaintiff has not developed any complications from his diabetes such as

11

peripheral arterial disease, or episodes of ketoacidosis. Id. at 21, 386-96, 455-63. Plaintiff has also not developed retinopathy, nephropathy, or retinitis proliferans, which is required to meet Listing 9.08. Id. at 21, 386-96, 455-63; 20 C.F.R. Pt. 404, Subpt. P, App. I.

During the hearing, Plaintiff testified that he feels that he is unable to work due to his left foot pain and RSD. Id. at 21, 519. He also testified that he suffers from back pain, which was caused by a disc at L4 level and arthritis. Id. at 21, 520. Plaintiff noted that his back and foot conditions are about the same as when he was first injured. Id. at 21, 523-24. He also indicated that his left foot swells and that his foot pain is aggravated by standing and walking. Id. at 21, 524. Plaintiff testified that he can only sit for 10-15 minutes, stand for 15-20 minutes, and walk for 15-20 minutes around the house. Id. at 21, 524, 528. His day-to-day activities involve sitting in a recliner while keeping his feet elevated and watching television. Id. at 21, 523-25. Plaintiff also contributes to the household chores such as vacuuming and cooking, but claims that this causes back and leg pain. Id. at 22, 525. In addition, Plaintiff can bathe himself, but he is not able to tie his shoes due to back pain from bending. Id. at 22, 528.

Plaintiff also testified about his history of alcohol, cocaine, and prescription drug abuse. Id. at 21, 520. He explained that he was hospitalized at Cherry Hospital and went through the DART Program to treat his substance abuse problem and that his treatment has been successful. Id. at 21-22, 521. Plaintiff also stated that he suffers from depression, but mentioned that this condition had improved since he had stopped using drugs. Id. at 17, 521-22. Finally, Plaintiff indicated that he has been diagnosed with other ailments such as diabetes and high blood pressure for which he has to take medication. Id. at 22, 527.

With regards to Plaintiff's testimony, the ALJ made the following findings:

The undersigned finds that, absent substance abuse, the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration, and limiting effects of these symptoms is not entirely credible. By his own testimony, the claimant's depressive symptoms improved since he stopped using drugs and this is supported by the medical record. With regard to his other conditions, the record reveals that the claimant does not have any evidence of nerve root compression related to his disc disease which might be expected based on the degree of pain alleged. He does not have any signs of inflammation or significant motor weakness related to his reflex sympathetic dystrophy. Further, the claimant has not required such aggressive measures for pain relief [such] as [the] use of steroid medication, epidural injections, application of TENS equipment, or enrollment in a physical therapy. The treatment regimen, therefore, indicates that the claimant's symptoms of pain are not as intractable as alleged. In addition, the claimant said that his back and foot conditions have not changed since his original injury yet he was able to work despite his residuals from these injuries for many years. The claimant has not developed any complications from his hypertension or diabetes. He does not have any signs of respiratory insufficiency related to his COPD and his pulmonary function tests results are within normal limits. The Administrative Law Judge also notes that the claimant originally testified that he was only a mechanic's helper. However, on further testimony, it was apparent that he performed all of the automobile's mechanic's work. These inconsistencies, as well as the claimant's history of substance abuse, further lessen his credibility in all areas. In addition, the medical evidence and observations by the Administrative Law Judge do not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, or other change in body habits or constitutional appearance such as weight loss, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process. These factors indicate that the claimant's allegations of functional restrictions are not fully credible.

Id. at 23.

In addition to Plaintiff's testimony, the ALJ also considered the opinions of the non-examining State agency medical and psychological consultants. Id. at 23. The consultants concluded that Plaintiff could perform the mental demands of at least unskilled work when he maintained sobriety and could maintain attention and concentration for at least two hours to

13

complete simple tasks.  Id. at 18, 241.  The ALJ noted that this assessment was consistent with

Plaintiff's medical records and gave this opinion great weight.  Id.  The consultants also concluded

that Plaintiff could perform medium exertional activities.  Id. at 23, 216, 239, 243-56, 312, 320.

However, the ALJ indicated that these assessments did not give sufficient consideration to Plaintiff's

symptoms and clinical findings; thus, he gave little weight to these opinions.  Id. at 23.  Furthermore,

the consultants also found that Plaintiff could perform the mental demands of work in a low-stress

environment involving limited social contact.  Id. at 23-24, 318.  The ALJ agreed that Plaintiff

would be limited to performing the demands of unskilled work, but disagreed with the additional

mental restrictions cited by the consultants because Plaintiff's depressive symptoms have been well-

controlled.  Id. at 24.

After weighing all of this evidence, the ALJ determined that Plaintiff retained the RFC to

perform  a narrow range of light work.  Id. at 20, 24.  Specifically, the ALJ found that:

> Absent use of drugs, the claimant can sit 6 hours in an 8-hour day and stand and walk
> for up to 3 hours each in an 8-hour day.  He requires a work environment which
> would permit him to change between sitting and standing positions at will.  He can
> lift a maximum of 20 pounds and can lift and carry 10 pounds frequently.  He has a
> decreased ability to concentrate on and attend to work tasks to the extent that he can
> perform only simple, routine, repetitive tasks.

Id. at 20.

Finally, the VE testified that given Plaintiff's age, education, work experience, and cessation

of his drug abuse, he would be able to perform the requirements of the following representative

occupations:

> [S]mall products assembler II (DOT code 739.687-030) with 50,000 jobs in the
> national economy and 1,000 in North Carolina; small products assembler I (DOT

14

code 706.684-022) with 150,000 jobs in the national economy and 2,000 in North Carolina; and plumbing and hardware assembler (DOT code 706.684-086) with 50,000 jobs in the national economy and 1,000 in North Carolina.

Id. at 25.

Based on Plaintiff's RFC and the VE's testimony, the ALJ concluded that Plaintiff would be capable of making a successful adjustment to work that exists in significant numbers in the national economy. Id. Thus, he has not been "disabled" within the meaning of the Social Security Act, at any time through the date of the ALJ's decision. Id.

## Assignments of Error

Plaintiff alleges five assignments of error, but only two will be addressed here because three issues warrant a remand in this case. The first issue requiring a remand involves the ALJ's citation of another patient's medical records. [R. at 352-72]. Under the section focusing on Plaintiff's RFC, the ALJ cites this record in two different places, when discussing Plaintiff's medical history. [R. at 20, 21]. The undersigned recommends remanding the case because it is not clear to what extent the ALJ relied on this record to make his decision. Specifically, further explanation is needed to determine whether the medical evidence from the incorrect record was dispositive on the outcome of the case, or whether it was just ancillary evidence that helped to support the ALJ's conclusion regarding Plaintiff's RFC.

The second issue for remand involves Plaintiff's Medicaid eligibility. [R. at 108]. In the decision, the ALJ notes that Plaintiff was found to be eligible to receive Medicaid assistance because he met the requirements under Listing 12.05C. Id. at 23, 108. However, he simply states that a determination of disability by another government agency is not binding on the SSA; therefore he

15

gave no weight to this opinion. Id. While the agency's decision is not binding on the SSA, on remand, further explanation is needed to determine why the ALJ did not give this decision any weight. See De Loatche v. Heckler, 715 F.2d 148, 150 n.1 (4th Cir. 1983) (stating that "the disability determination of a state agency is entitled to consideration by the Secretary"); Best v. Astrue, No. 5:06-CV-301-D, 2008 U.S. Dist. LEXIS 312, *at 6-7 (E.D.N.C. Jan. 3, 2008) (unpublished decision) (concluding that the Commissioner has to explain the consideration, if any, given to another agency's decision); Owen v. Barnhart, 444 F. Supp. 2d 485, 492 (D.S.C. 2006) (holding that the ALJ is not bound by another government agency's decision, but "should be required to provide sufficient articulation of his reasons for [rejecting the decision] to allow for a meaningful review by the courts").

The third and final issue that should be addressed on remand is whether Plaintiff meets Listing 12.05C. Plaintiff alleges that the ALJ had evidence of his prior claim file [R. 210-14], poor school performance [R. at 103-04], low IQ scores [R. at 105-07], Medicaid eligibility [R. at 108], and illiteracy [R. at 515-16, 534] before him when making his determination about Plaintiff's impairments and RFC. However, the ALJ failed to mention these deficiencies, except for his illiteracy, and did not explain why they were not severe impairments or why they failed to meet Listing 12.05C. On remand, the ALJ should explain to what extent he considered the evidence of Plaintiff's intellectual deficiencies and why these deficiencies are not considered severe impairments or meet Listing 12.05C.

The two assignments of error that will be addressed involve Plaintiff's treating physicians' opinions and the credibility of Plaintiff's testimony. Plaintiff contends that the ALJ erred by

16

rejecting his treating physicians' opinions and failing to re-contact these physicians regarding inconsistencies in their treatment records.  **[DE-12, p. 6]**.  The Regulations promulgated by the Commissioner afford deference to a treating physician's opinion regarding the nature and severity of a claimant's impairments if the opinion is supported by "medically acceptable clinical and laboratory evidence in the record." <u>Baldwin v. Barnhart</u>, 444 F. Supp. 2d 457, 466 (E.D.N.C. 2004). However, the ALJ is not required to mechanically accept the treating physician's opinion "in the face of persuasive contrary evidence." <u>Id.</u> (quoting <u>Craig</u>, 76 F.2d at 590).  Instead, the ALJ can give the opinion significantly less than controlling weight and is required to resolve the inconsistencies in the evidence.  <u>Id.</u>  In this case, the ALJ considered the statements from Drs. Cosenza and Whitted, Plaintiff's treating physicians. [R. at 23].

### A.     Dr. Cosenza

With regard to Dr. Cosenza's opinion, the ALJ made the following finding:

> On August 3, 2004, Dr. Cosenza stated that the claimant could only stand for 20-30 minutes and was quite limited in his capacities of daily living.  On March 11, 2005, Dr. Cosenza stated that the claimant had moderate limitation in the areas of activities of daily living and socialization and that he also had deficiencies in concentration, persistence, and pace.  Dr. Cosenza further stated on that date that the claimant was unable to work.  The Administrative Law Judge finds that these assessments are not supported by the physician's own treatment records and are contradicted by substantial and other medical evidence. In addition, Dr. Cosenza does not have any medical expertise with regard to psychiatric conditions.   Therefore, the Administrative Law Judge gives little weight to these opinions.

[R. at 23].

While Plaintiff alleges that the ALJ failed to articulate the inconsistencies in the doctor's statements, the record is replete with contradictory evidence.  For example, in July 2004, Dr.

Cosenza's treatment notes indicate that Plaintiff's extremities had normal deep tendon reflexes, some discomfort but no radiculopathy on straight leg raising, minimal edema in his left foot, and only mild lumbar tenderness. [R. at 301]. During that same examination, the doctor also reported that Plaintiff's left foot RSD and low back pain were chronic but stable problems. Id. In addition, during his assessment on March 11, 2005, Dr. Cosenza could not indicate the degree of pain that Plaintiff suffers from. Id. at 330. Instead, he opined that Plaintiff's chronic pain was individual and subjective and that although Plaintiff reported that his pain was mild to severe, the doctor "had no reason to believe [Plaintiff] suffers pain to a level he believes is severe." Id.

Additionally, several months later, Dr. Cosenza stated that the change in Plaintiff's pain prescription from Vicodin to Methadone, produced positive results; Plaintiff indicated that he was "quite happy" with the change and did not report any problems with pain. Id. at 386-87. In all, the doctor's treatment records do not adequately support his opinions about Plaintiff's inability to work due to his ailments. Instead, they reflect the fact that despite Plaintiff's difficulties, his conditions were relatively stable and he was responding to his pain medication. Therefore, the ALJ was not required to give Dr. Cosenza's opinions controlling weight.

Plaintiff also challenges the ALJ's conclusion that Dr. Cosenza "does not have any medical expertise with regard to psychiatric conditions;" and thus, his opinion is entitled to little weight. Id. at 23; [DE-12, p. 6]. However, Plaintiff has offered no evidence to prove that Dr. Cosenza is a "pain specialist" who is "qualified to give an opinion on how pain effects mental functioning." [DE-12, p. 6]. Instead, he cites Social Security Ruling ("SSR") 03-02p in support of his argument. Id. SSR 03-02p states that opinions from treating medical sources about an individual's ability to perform

18

work activities or activities of daily living enable the adjudicator to draw conclusions about the severity of an individual's impairment(s) and RFC. 2003 SSR LEXIS 2, *at 21. However, the ruling does not indicate that the ALJ is required to give these opinions controlling weight if they are inconsistent with the other evidence in the record. Id. In this case, the record reflects that when Dr. Cosenza discussed Plaintiff's chronic pain, he recommended sending him to a pain clinic for treatment (R. 391), and the pain clinic was primarily responsible for helping to relieve his pain and handling his pain medication (R. 390). In addition, Dr. Cosenza's assessment of Plaintiff's limitations due to his pain is inconsistent with Dr. Whitted's assessment, who completed the same report a year later. Specifically, Dr. Whitted did not report any restrictions in Plaintiff daily living, difficulty in maintaining social functioning, or deficiencies in concentration, persistence, or pace. Id. at 481. Therefore, the ALJ was not required to give Dr. Cosenza's opinion regarding Plaintiff's pain and mental condition controlling weight because he was not an expert in the field and his opinion did not comport with other evidence in the record.

### B.   Dr. Whitted

With regard to Dr. Whitted's opinion, the ALJ made the following finding:

On March 14, 2006, Dr. Whitted stated that the claimant had mild to moderate pain. On January 24, 2006, he stated that the claimant reported that he was unable to stand for more than 10-15 minutes due to pain. Since these assessments are apparently based on the claimant's report rather than on objective medical findings, and since the statements are not supported by the physician's own clinical records, the Administrative Law Judge gives little weight to these opinions.

Id. at 23.

Plaintiff also asserts that it was error for the ALJ to give Dr. Whitted's opinion little weight. **[DE-12, p. 6]**. However, there is substantial evidence to support the ALJ's conclusion. To illustrate, in March, 2006, Dr. Whitted opined that Plaintiff had mild to moderate pain and that some of the symptoms associated with his pain included sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty with concentrating or thinking. [R. at 481]. However, in that same report, Dr. Whitted did not note any limitations or restrictions in Plaintiff's daily living, social functioning, or mental acuity that would be associated with Plaintiff's pain. Id. Thus, the ALJ weighed this evidence and concluded that Dr. Whitted's assessments should not be given significant weight because they cannot be independently verified through objective medical testing; they are based primarily on Plaintiff's subjective complaints. Id. at 23.

In January, 2006, Plaintiff reported that he was unable to stand for more than 10-15 minutes because of his pain. Id. at 483. However, during that same visit, Dr. Whitted indicated that Plaintiff's difficulties with his peripheral edema responded well to the diuretic. Id. In addition, Plaintiff also stated that his pain was only 3/10 (384) or 4/10 (375) and that the pain increased with prolonged standing and walking, but decreased with rest, heat, and medication. Id. at 375, 380, 384, 447, 482. In fact, Plaintiff reported to Dr. Whitted that he had "great improvement" in his pain since starting Methadone, continues to walk for the treatment of his symptoms, and is able to more active by helping his father in his shop. Id. at 380, 384. Therefore, the ALJ's conclusion that Dr. Whitted's opinion does not reflect his own treatment records is supported by substantial evidence.

As a corollary to these arguments, Plaintiff also asserts that the ALJ "failed to try to contact [his treating physicians], as required by 20 C.F.R. § 404.1527" to resolve the inconsistencies in their records. **[DE-12, p. 7]**. Regulation 20 C.F.R. § 404.1527(a)(3) states:

> [i]f the evidence is consistent but [the adjudicator] do[es] not have sufficient evidence to decide whether [the claimant] is disabled, or if after weighing the evidence [the adjudicator] decide[s] [he or she] cannot reach a conclusion about whether [the claimant is] disabled, [the adjudicator] will try to obtain additional evidence under the provisions of §§ 404.512 and 404.1519 through 404.1519h. [The adjudicator] will request additional existing records, recontact [the claimant's] treating sources or any other examining sources, ask [the claimant] to undergo a consultative examination at [their] expense, or ask [the claimant] or others for more information. [The adjudicator] will consider any additional evidence [he or she] receive[s] together with the evidence [he or she] already has.

Id.

Similarly, SSR 96-5p states that "[f]or treating sources, the rules . . . required that [the adjudicators] make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commission and the bases for such opinions are not clear . . . ." 1996 SSR LEXIS 2, *at 6. The Regulation and Social Security Ruling do not apply to this case. Here, the ALJ did not have difficulty weighing the evidence or determining the basis of the treating sources' opinions. Rather, the ALJ concluded that their opinions were inconsistent with their own treatment records and the evidence in the record as a whole. Thus, Plaintiff's argument is without merit.

In Plaintiff's other assignment of error, he challenges the ALJ's credibility determination regarding his Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome ("RSDS/CRPS"). **[DE-12, p. 7]**. Specifically, Plaintiff asserts that the ALJ "failed to follow SSR

03-02p, which expressly explains how to evaluate claims involving RSDS/CRPS." Id. SSR 03-2p states:

> Claims in which the individual alleges RSDS/CRPS are adjudicated using the sequential evaluation process, just as for any other impairment. Because finding that RSDS/CRPS is a medically determinable impairment requires the presence of chronic pain and one or more clinically documented signs of the affected region, the adjudicator can reliably find that pain is an expected symptom in this disorder. Given that a variety of symptoms can be associated with RSDS/CRPS, once the disorder has been established as a medically determinable impairment, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionality limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the record. Although symptoms alone cannot be the basis for finding a medically determinable impairment, once the existence of a medically determinable impairment has been established, and individual's symptoms and effect(s) of those symptoms on the individual's ability to function must be considered both in determining impairment and severity and in assessing the individual's residual functional capacity (RFC), as appropriate. If the adjudicator finds that pain or other symptoms cause a limitation or restriction having more than a minimal effect on a individual's ability to perform basic work activities, a 'severe' impairment must be found to exist.

2003 SSR LEXIS 2, *at 17-19.

In his decision, the ALJ followed this framework and determined that Plaintiff's RSDS/CRPS was a severe impairment. Id. at 17. However, the ALJ also noted that the impairment was not so severe that it would preclude Plaintiff from performing work that exists in the national economy. Id. at 25. Specifically, the ALJ concluded ". . . the claimant's medically determinable

impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration, and limiting effects of these symptoms are not entirely credible." Id. at 22.

Plaintiff contends that the ALJ's conclusion was in error because, "[t]he ALJ . . . attempt[ed] to require objective evidence to corroborate the intensity of [Plaintiff's] pain . . . ." This argument is incorrect. The ALJ's decision followed the guidelines in SSR 03-2p and relevant case law, which states that when an individual's subjective complaints are not supported by objective medical evidence, the ALJ must make a finding about the individual's credibility based on the entire medical record. See Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986) (stating that "[p]ain is not disabling *per se*, and subjective evidence of pain cannot take precedence over objective medical evidence or the lack thereof"). In doing so, the ALJ did not discount Plaintiff's subjective complaints; instead, he reasoned that these complaints were not adequately supported by other objective medical evidence in the record, or the lack thereof, the restriction of Plaintiff's daily activities, and Plaintiff's treatment regimen. Thus, this argument must fail.

In addition, Plaintiff correctly points out that the ALJ mischaracterized his testimony about being a mechanic's helper (517-18, 531-32) and also the fact that he received epidural injections for treatment of his chronic back pain (204). **[DE-12, pgs. 8-9]**; See [R. at 22-23]. However, despite these errors, the ALJ still cited substantial evidence to conclude that Plaintiff's testimony regarding the intensity and severity of his pain was not entirely credible. Plaintiff also takes issue with the fact that the ALJ found that his past drug use made his allegations less credible. [R. at 23]. Specifically, Plaintiff notes that the ALJ "did not explain this finding or use any piece of evidence in the file to

support it." **[DE-12, pgs. 12-13]**. However, the ALJ cited in depth Plaintiff's extensive history with substance abuse and relapses dating back to 1998. [R. at 17-20]. Therefore, Plaintiff's argument is without merit.

### Conclusion

For the reasons discussed above, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings **[DE-11]** be DENIED IN PART AND GRANTED IN PART and Defendant's Cross-Motion for Judgment on the Pleadings **[DE-15]** be DENIED without prejudice. Specifically, it is RECOMMENDED that the matter be remanded to permit the ALJ to further address and discuss his reliance on an incorrect medical record, his failure to give weight to Medicaid's determination of disability, and whether Plaintiff's intellectual deficiencies are considered severe impairments and meet Listing 12.05C.

DONE AND ORDERED in Chambers at Raleigh, North Carolina this 14th day of March, 2008.

_____
William A. Webb
U.S. Magistrate Judge

25